OXFORD HOUSE AT YALE *v.* VINCENT GILLIGAN
(AC 31254)

DiPentima, C. J., and Lavine and Hennessy, Js.

Argued September 3—officially released December 14, 2010

*Kirk W. Lowry*, with whom, on the brief, was *Micheala L. Mitchell*, for the appellant (defendant).

*Ori D. Spiegel*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. In this procedurally unusual case, the defendant, Vincent Gilligan, appeals from the judgment of the trial court rendered in his favor dismissing the plaintiff's summary process action.[1] On appeal, the

---

[1] Although judgment was rendered in his favor, the defendant is aggrieved by the court's holding that the plaintiff, Oxford House at Yale, may expel the defendant from his residence without having to comply with the requirements of our summary process statutes. "Aggrievement, in essence, is appellate standing. . . . In the appellate context, [a]ggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citation omitted; internal quotation marks omitted.) *Nanni* v. *Dino Corp.*, 117 Conn. App. 61, 70, 978 A.2d 531 (2009).

defendant claims that the court improperly (1) permitted the plaintiff to prevail on a claim that was not pleaded and that was introduced after the close of evidence, and (2) concluded that the plaintiff is exempt from the summary process statutes as a service providing institution pursuant to the exception enumerated in General Statutes § 47a-2 (a) (1). Because we agree with the defendant's first claim, we do not reach the second claim, and we vacate the judgment of the trial court and remand the case for further proceedings.[2]

The following undisputed facts and procedural history guide our analysis. The plaintiff, Oxford House at Yale, is an independent, self-governing residential community for people recovering from alcohol and drug addictions, commonly referred to as a "sober house." In a large house it leases in New Haven, the plaintiff provides a communal drug and alcohol free living environment for as many as fifteen member-residents at one time. The day-to-day affairs of the house, including the expulsion of member-residents, are determined by a vote of the majority of the member-residents. The defendant is a member-resident of the plaintiff.

On April 20, 2008, the plaintiff's other member-residents voted to expel the defendant after he refused to comply with a required room inspection. Despite being served with a notice to quit possession on July 30, 2008, the defendant refused to vacate the premises voluntarily. On August 12, 2008, the plaintiff commenced the underlying summary process action seeking possession of the defendant's room.

In its operative complaint, the plaintiff alleged that the defendant's right or privilege to occupy had terminated "by a vote by the members of [the plaintiff] in accordance with its established rules and procedures."

---

[2] We note that the defendant's second claim presents an issue of first impression that we do not reach in light of the factual record before us.

In reply, the defendant filed an answer with special defenses, denying that his right or privilege of occupancy had terminated and asserting four defenses to the eviction.[3]

The court conducted a trial on February 5 and 10, 2009. The plaintiff's witness, longtime member-resident Craig Cairone, testified regarding the plaintiff's rules, including the voting procedures used to expel member-residents and the policy toward disruptive behavior. He also testified to the defendant's history of disruptive behavior in the house, the defendant's behavior on April 20, 2008, which led to the expulsion vote, and the details of that vote.

In his defense, the defendant testified that on April 20, 2008, he was suffering from a panic attack that prevented him from opening his door for the room inspection. The defendant further testified that the April 20, 2008 vote held to expel him was deficient procedurally because (1) he was not present at the vote and (2) it lacked the requisite number of members to effectuate an expulsion.

At the close of evidence, the court ordered the parties to submit simultaneous posttrial briefs. In his posttrial brief, the defendant argued that the evidence demonstrated that his right or privilege to occupy his room had not terminated because the vote held to expel him

---

[3] The following four defenses are asserted in the defendant's second amended answer: (1) the plaintiff, as a voluntary, unincorporated association, could not acquire a leasehold in property and was, therefore, void of authority to bring the underlying action, (2) the plaintiff's failure to serve a "Kapa" notice on the defendant pursuant to General Statutes § 47a-15 deprived the court of subject matter jurisdiction over the plaintiff's claim, (3) pursuant to the Fair Housing Act, 42 U.S.C. § 3601 et seq., the defendant's disability entitled him to a reasonable accommodation with respect to the plaintiff's rules and procedures, and (4) eviction would cause great hardship for the defendant.

on April 20, 2008, was deficient procedurally. Additionally, the defendant reasserted and argued his four defenses.[4]

In its posttrial brief, the plaintiff claimed that the April 20, 2008 vote was valid and effectively terminated the defendant's right or privilege to occupy his room. Additionally, the plaintiff addressed the defenses that the defendant had set forth in his answer, asserting that it had standing and authority to bring the present suit and that the defendant was not entitled to a Kapa notice[5] or a reasonable accommodation. In the alternative, however, the plaintiff argued, for the first time, that the court was without subject matter jurisdiction to entertain the action because the plaintiff was exempt from having to comply with the summary process statutes pursuant to two provisions of § 47a-2 (a).[6]

The court issued its memorandum of decision on June 30, 2009. In its decision, the court made findings of fact relevant to whether the defendant's right or privilege to occupy had terminated. Those findings established that the plaintiff was a self-governing, therapeutic community that leased the home it occupied and that the April 20, 2008 vote was valid. The court, however, identified the threshold issue as whether

---

[4] See footnote 3 of this opinion.

[5] General Statutes § 47a-15 requires landlords to first issue written notice of alleged noncompliance to tenants. Landlords must then provide time for the "errant tenants to remedy their first miscue" prior to commencing a summary process action based upon noncompliance with the rental agreement. *Kapa Associates* v. *Flores*, 35 Conn. Sup. 274, 278, 408 A.2d 22 (1979).

[6] General Statutes § 47a-2 (a) provides in relevant part: "Unless created to avoid the application of this chapter and sections . . . the following arrangements are not governed by this chapter and sections . . . (1) Residence at an institution, public or private, if incidental to detention or the provision of medical, geriatric, educational, counseling or religious service, or any similar service . . . (3) occupancy by a member of a fraternal or social organization in the portion of a structure operated for the benefit of such organization . . . ."

sober houses in Connecticut needed to comply with our summary process statutes in order to expel a resident. The court then concluded that the plaintiff satisfied the statutory elements set forth in § 47a-2 (a) (1), determining specifically that the plaintiff was not created to avoid the summary process procedure and was an institution that provided residence incidental to the provision of a service similar to those enumerated in the statute. As a result, the court found that the relationship between the plaintiff and the defendant was not governed by the summary process statutes and rendered judgment in favor of the defendant on that basis. This appeal followed.

The defendant first claims that the basis of the judgment was a statutory exemption that was neither pleaded nor raised in the evidentiary portion of the trial. The defendant asserts that under such circumstances he was prejudiced and unable to develop an adequate record for review by this court. We agree.

We begin by setting forth our standard of review. "The [defendant's] claim requires us to interpret the allegations of the plaintiff's complaint to determine what it fairly alleges and to compare those allegations with the court's judgment, as informed by the trial record. The interpretation of pleadings presents a question of law over which our review is plenary." *Landry* v. *Spitz*, 102 Conn. App. 34, 41, 925 A.2d 334 (2007).

"The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . A complaint should fairly put the defendant on notice of the claims against him. . . . Thus, a plaintiff during trial cannot vary the factual aspect of his case in such a way that it alters the basic nature of the cause of action alleged in his complaint. . . . In other words, [a] plaintiff may not allege one

cause of action and recover upon another." (Citations omitted; internal quotation marks omitted.) Id.

"The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Citations omitted; internal quotation marks omitted.) *Lyons* v. *Nichols*, 63 Conn. App. 761, 765, 778 A.2d 246, cert. denied, 258 Conn. 906, 782 A.2d 1244 (2001). "Whether a complaint gives sufficient notice is determined in each case with reference to the character of the wrong complained of and the underlying purpose of the rule which is to prevent surprise upon the defendant." (Internal quotation marks omitted.) *Tedesco* v. *Stamford*, 215 Conn. 450, 459, 576 A.2d 1273 (1990).

The plaintiff's revised complaint alleged that the defendant previously held possession of his room with the "knowledge and/or acquiescence" of the plaintiff, that the defendant's "right or privilege to occupy the premises has terminated by a vote by the members of [the plaintiff] in accordance with its established rules and procedures" and that the defendant has continued in possession of his room.

After reviewing the operative complaint, we conclude that it did not provide the defendant with adequate notice of the plaintiff's claim that it was exempt from having to comply with the summary process statutes.

"Summary process is aimed at deciding the simple question of who is entitled to possession." (Internal quotation marks omitted.) *Altomari* v. *Altomari*, 121 Conn. App. 235, 239, 994 A.2d 348 (2010). Thus, as framed by the plaintiff's revised complaint, the issue at trial was the termination of the defendant's right or privilege to occupy. Nowhere does the plaintiff's revised complaint provide notice that an exemption is claimed to the rules and procedures the plaintiff invoked to obtain possession.

Our analysis, however, does not end here. We previously have stated that "in the context of a postjudgment appeal, if a review of the record demonstrates that an unpleaded cause of action actually was litigated at trial without objection such that the opposing party cannot claim surprise or prejudice, the judgment will not be disturbed on the basis of a pleading irregularity." *Landry* v. *Spitz*, supra, 102 Conn. App. 43–44. In doing so, we recognized our Supreme Court's determination that whether a complaint provides sufficient notice of the facts claimed and issues to be tried presents "a fundamentally different question from whether [the complaint] fails to state a cause of action because of the omission of an essential allegation, a deficiency that should be raised before trial." *Tedesco* v. *Stamford*, supra, 215 Conn. 459.

After a careful review of the pleadings and trial record, we conclude that the present case does not involve the type of pleading irregularity found in *Landry* and *Tedesco*. In *Landry*, this court determined that the defendant was not prejudiced by a pleading defect where the plaintiff simply had failed to include in its complaint an essential factual allegation that was both consistent with the stated cause of action and sufficiently put in issue at trial. *Landry* v. *Spitz*, supra, 102 Conn. App. 44–45. In the present case, however, the

plaintiff pleaded and litigated a claim that the defendant's right or privilege to possession of his room had terminated pursuant to our summary process statutes, and then prevailed on a claim that it was not subject to the requirements of the summary process statutes, an assertion inconsistent with the claim set forth in the complaint and premised on facts never put in issue at trial.

At trial, the plaintiff submitted evidence and elicited testimony to show that the defendant had engaged in proscribed conduct and that a procedurally valid vote had stripped him of his right or privilege to occupy the plaintiff's premises. The defendant, likewise, focused on his conduct and the validity of the vote. The court, however, resolved the case on a determination that the plaintiff, pursuant to § 47a-2 (a) (1), was not created to avoid the summary process statutes and was an institution that provided residence incidental to the provision of a service similar to those enumerated in the statute. Whether the plaintiff satisfied these statutory elements required an analysis of facts that had never been put in issue at trial.

The case cited by the court in its memorandum of decision, *Burke* v. *Oxford House of Oregon Chapter V*, 196 Or. App. 726, 103 P.3d 1184 (2004), rev'd, 341 Or. 82, 137 P.3d 1278 (2006), sets out the factual framework needed for the exemption determination, which is not present here. In *Burke*, the record on appeal contained significant details of the defendant's structure, operation and living environment, including testimony from multiple Oxford House of Oregon Chapter V members pertaining to the alleged "services" it offered. Id., 739–41. Furthermore, evidence was proffered of a memorandum written by Oxford House, Inc., explicitly advising Oxford House of Oregon Chapter V to structure its lease agreements in a manner that allowed them to avoid local

landlord tenant law: evidence that the arrangement was "created to avoid" Oregon's summary process statutes. *Burke* v. *Oxford House of Oregon Chapter V*, 341 Or. 82, 90–91, 137 P.3d 1278 (2006). Here, not only were there insufficient factual findings on these details, but also the defendant was deprived of the opportunity to engage in pertinent discovery and to proffer evidence on such critical facts. Under such circumstances, the defendant was both surprised and prejudiced.

To the extent that the plaintiff casts its exemption argument as a challenge to the court's subject matter jurisdiction, our reasoning and conclusion remain unchanged. We are mindful that a challenge to a court's subject matter jurisdiction may be raised at any time and by any party; see *Vanwhy* v. *Commissioner of Correction*, 121 Conn. App. 1, 7, 993 A.2d 478 (2010); and that "[o]nce . . . raised, [the challenge] must be disposed of no matter in what form it is presented." (Internal quotation marks omitted.) *In re DeLeon J.*, 290 Conn. 371, 376, 963 A.2d 53 (2009). However, "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. . . . When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Citations omitted; internal quotation marks omitted.) *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 56, 459 A.2d 503 (1983). Accordingly, we conclude that the court improperly determined this case on a basis neither pleaded nor litigated.

The judgment is vacated and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.